1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

| | |
|---|---|
| DEVONTE B. HARRIS,<br><br>          Plaintiff,<br><br>     v.<br><br>A. RESTIVO, et al.,<br><br>          Defendants. | Case No. 1:20-cv-00797-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S RETALIATION CLAIMS AGAINST DEFENDANTS LEVAN AND RESTIVO; PLAINTIFF'S SECTION 1983 MALICIOUS PROSECUTION CLAIMS AGAINST DEFENDANTS LEVAN AND RESTIVO; AND PLAINTIFF'S <u>DEVEREAUX</u> CLAIMS AGAINST DEFENDANTS LEVAN, REYNOLDS, AND RESTIVO; AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF No. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

25

26

27

28

        Devonte Harris ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on June 8, 2020. (ECF No. 1). As it appeared "from the face of the complaint that most, if not all, of Plaintiff's claims are time-barred," the Court ordered Plaintiff to "show cause why this

1

action should not be dismissed because Plaintiff's claims are barred by the statute of limitations." (ECF No. 5, p. 4). On July 17, 2020, Plaintiff filed his response to the order to show cause. (ECF No. 7). The complaint is now before this Court for screening.

The Court has reviewed the complaint and finds that the following claims should proceed past the screening stage: Plaintiff's retaliation claims against defendants Levan and Restivo; Plaintiff's section 1983 malicious prosecution claims against defendants Levan and Restivo; and Plaintiff's <u>Devereaux</u> claims against defendants Levan, Reynolds, and Restivo. The Court also finds that all other claims and defendants should be dismissed.

Accordingly, the Court issues these findings and recommendations to the assigned district judge, recommending that this case proceed on Plaintiff's retaliation claims against defendants Levan and Restivo; Plaintiff's section 1983 malicious prosecution claims against defendants Levan and Restivo; and Plaintiff's <u>Devereaux</u> claims against defendants Levan, Reynolds, and Restivo; and that all other claims and defendants be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u>

(quoting <u>Twombly</u>, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Id.</u> at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  <u>Iqbal</u>, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after <u>Iqbal</u>).

## II.     SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges as follows in his complaint:

At all times relevant, Plaintiff was imprisoned at California State Prison, Corcoran.

Plaintiff is a litigious inmate, and it is widely known amongst staff.

Prior to February 25, 2013, Plaintiff had filed an administrative appeal against defendant Levan, a licensed vocational nurse ("LVN"), about her making arrangements behind Plaintiff's back with the psychiatrist to move some medication Plaintiff received at noon to the morning so she would have less work at noon, irrespective of how it affected Plaintiff's mental health.  This occurred in the early months of 2011.

Prior to February 25, 2013, Plaintiff had also filed several grievances against defendant Levan's coworkers: LVN Bertram, LVN Brown, LVN Gray, LVN Ballesteros, and LVN Gonzalez.

These grievances proved ineffective due to them being decided by their peers in the nursing administration.  So, Plaintiff took a different approach in a matter with LVN Gonzalez and pursued a complaint with the California Board of Vocational Nurses and Psychiatric Technicians in the months preceding February 25, 2013.

A few weeks before February 25, 2013, Plaintiff's liquid supplement drink had expired. Plaintiff told defendant Levan he needed it renewed.  Defendant Levan told Plaintiff that she would help if he stopped filing paperwork against Gonzalez.  Plaintiff declined her help.

On February 25, 2013, Plaintiff was housed in the Security Housing Unit ("SHU") for

disciplinary segregation. Around 7 a.m., defendant Reynolds, a correctional officer, escorted defendant Levan to Plaintiff's cell so she could administer Plaintiff's medication. Plaintiff was wearing a pair of boxers and a t-shirt.

Plaintiff turned on his lights, filled his cup with water, and proceeded to go to the front of his cell as required by policy. Defendant Levan placed a cup with Plaintiff's medication on the food port in his cell door. As Plaintiff raised it to his mouth and swallowed his medication with water out of the cup he was holding, defendant Levan blurted out something to the extent of "Harris (Plaintiff) why are you showing that male C/O your dick." Plaintiff was taken aback, as his penis was in no way exposed. Defendant Reynolds shut Plaintiff's food port, and they left.

Correctional staff placed yellow placards on Plaintiff's cell door, leaving only an eight-inch space at the top as a security precaution, a day after defendant Levan's false indecent exposure accusation.

These placards broadcasted to both staff and inmates alike that Plaintiff had been accused of a sex-related offense. As a result, Plaintiff suffered increased anxiety, fear, worry, shock, embarrassment, shame, humiliation, anger, powerlessness, and hopelessness.

Mental health staff had already diagnosed Plaintiff with a generalized anxiety disorder with panic attacks. The psychiatrist had prescribed Plaintiff Buspar in the morning and afternoon, Zoloft in the evening, and Viseril at night.

Defendant Levan worked the morning and afternoon shift five days a week in the unit assigned to house Plaintiff. On the afternoon of February 25, 2013, defendant Levan did not deliver Plaintiff's prescribed Buspar. On the evening of February 25, 2013, defendant Levan worked overtime in Plaintiff's unit, and she did not deliver Plaintiff's prescribed Zoloft that evening or his prescribed Viseril that night. On the morning of February 26, 2013, defendant Levan worked in Plaintiff's unit and she did not deliver Plaintiff's prescribed Buspar in the morning or afternoon.

On all these occasions, defendant Levan falsely documented in Plaintiff's medication administration records that Plaintiff refused his medication. She also falsely noted that on the

morning med pass she offered meds to Plaintiff, that Plaintiff said no, and that Plaintiff said he was going to write her up and say she did not offer Plaintiff meds.  Defendant Levan concocted this fabrication in response to Plaintiff submitting an inmate request form to defendant Cortez to forward to defendant Quillen, who escorted defendant Levan that med pass, asking defendant Quillen to document defendant Levan's non-delivery of Plaintiff's medication.

In a true cover-up form, defendant Quillen also documented falsely in Plaintiff's segregation record that Plaintiff refused his medication.

Notably, no custody staff had ever taken pains to document any of Plaintiff's purported refusals outside of the non-delivery referenced in Plaintiff's inmate request.

On February 26, 2013, defendant Levan reported these purported refusals to the psychiatrist as required by policy and virtually requested that Plaintiff's medication be discontinued.

On the evening of February 26, 2013, a different LVN worked in the evening and Plaintiff received both his Zoloft in the evening and his Viseril at night.

On the morning of February 27, 2013, defendant Levan worked in Plaintiff's unit and she did not deliver Plaintiff's prescribed Buspar in the morning or afternoon.  On the evening of February 27, 2013, a different LVN worked in Plaintiff's unit and he received both his Zoloft in the evening and his Viseril at night.

In the evening of February 27, 2013, Plaintiff submitted a health care services request form complaining of defendant Levan's failure to deliver Plaintiff's medication.

On February 28, 2013, defendant Levan resumed delivering Plaintiff's medication to him in the morning.  However, Plaintiff attended law library during the afternoon med pass and defendant Levan did not deliver Plaintiff's medication to him there as required.

Defendant Levan's non-delivery of Plaintiff's medication was a ploy to bolster staff's perception of her false indecent exposure accusation and appear like she no longer wanted to interact with him.

On February 27, 2013, defendant Levan authored her false report against Plaintiff for indecent exposure.  She claimed that on February 25, 2013, during morning med pass,

5

defendant Reynolds opened the food port and backed away.  As she administered Plaintiff his medication, she claimed he "pulled on the right corner of his boxers over to the left side, allowing his erect penis to fall out of his boxers.  [Plaintiff] began to stroke his erect penis with his right hand as he directly made eye contact with [her].  [She] immediately ordered [Plaintiff] to stop his actions and told him this was inappropriate behavior.  [Plaintiff] just started to laugh and continued to strike his erect penis.  Officer Reynolds secured the foot port and we left the section…."  (ECF No. 1, p. 15) (alterations in original).

In an accompanying crime/incident report, defendant Reynolds authored a false staff report.  He claimed that he "opened the food port for Lvn Levan and she administered [Plaintiff] his medication.  [Plaintiff] adjusted his boxers in a way that he purposely allowed his erect penis to fall out of his boxers.  [Plaintiff] grabbed his erect penis and started arousing himself.  Lvn K. Levan informed [Plaintiff] his behavior was uncalled for and that she would write him up.  [Plaintiff] laughed…."  (Id. at 15-16) (alterations in original).

The California Department of Corrections and Rehabilitation referred Plaintiff to the Kings County District Attorney for criminal prosecution for violating penal code § 314: indecent exposure.   A conviction would have required lifetime registration as a sex offender.

Plaintiff postponed his disciplinary hearing pending the outcome of his "D.A." in order to protect his Fifth Amendment rights.

On March 29, 2013, the D.A. rejected Plaintiff's case for prosecution due to the interest of justice, triggering prison disciplinary proceedings.

On April 22, 2013, Lieutenant A.M. Gonzales found Plaintiff guilty of indecent exposure.  Gonzales penalized Plaintiff with loss of the following privileges for 180 days: TV/radio, personal property, canteen, special purchase, and annual packages.  Plaintiff also lost yard for ten days and ninety days of good time credits.

On May 14, 2013, Plaintiff filed a 602 against defendant Restivo for not delivering his afternoon medication when he attended law library.  On June 14, 2013, defendant Restivo's supervisor, E. Garnett, interviewed Plaintiff for his 602.  On June 15, 2013, Garnett monitored defendant Restivo administering morning medication.  Later, defendant Restivo told Plaintiff to

1    talk to her about any issues as she did not want Garnett coming to the unit.

2         On June 18, 2013, defendant Restivo brought Plaintiff's medication to law library.

3    Another inmate said she had accused inmate Irving of indecent exposure earlier that day.

4    Defendant Restivo used the backdrop of that conversation to manipulate Plaintiff into

5    withdrawing the 602.

6         On June 30, 2013, in the afternoon, defendant Restivo falsely accused Plaintiff of

7    incident exposure.  She claimed Plaintiff yelled out from a yard cage, "[n]urse you working a

8    double tonight[?]"  She turned towards Plaintiff, who had his boxers around his thighs and his

9    right hand on his erect penis, stroking it in an up and down motion while looking directly at

10   her.  She went and told Correctional Officer Alexander.

11        Defendant Restivo pointed Plaintiff out to Alexander, who identified Plaintiff by name.

12   Despite administering medication to Plaintiff five days a week, twice a day, she could not

13   identify Plaintiff by name.

14        Although Plaintiff did occupy the relevant yard cage, Plaintiff did not call defendant

15   Restivo, have his boxers down, touch his penis, or expose his penis.

16        Plaintiff initially refused when staff tried to handcuff him for escort back to the housing

17   unit.  When he did comply, defendants Bonilla and Carranza escorted Plaintiff to a holding tank

18   in the rotunda of a building.  There they affixed him by a security triangle (a triangular metal

19   bar with a chain to attach to cuffs) to a metal door with his arms hoisted behind his back for

20   about an hour.  Defendants Molina, Staggs, and Pruix saw Plaintiff improperly restrained like

21   this, but did not intervene.

22        Defendant Bloomfield placed Plaintiff on management status for two days, leaving him

23   with only one blanket, one pair of boxers, one pair of shoes, and a mattress in his cell.  Staff

24   removed everything else, including his personal and legal property, then placed him in the cell.

25   His effects were put in four big bags and a box.  One bag disappeared.

26        Defendant Godina placed Plaintiff on an exposure control jumpsuit, requiring Plaintiff

27   to wear an exposure control jumpsuit outside his cell for ninety days.  An exposure control

28   jumpsuit is an ensemble made of canvas, with no frontal openings, that a person steps into.  It

7

is laced up through the back and secured with a lock, like a straight jacket.  It prevents exposing one's self and relieving one's self.

Pursuant to policy, Defendant Godina should only have placed Plaintiff on an exposure control jumpsuit for thirty days because Plaintiff had not been accused of indecent exposure outside of his cell within a year.

Defendant Bloomfield should have reviewed weekly the application of the exposure control jumpsuit per policy, but did not.

Defendant Godina also placed Plaintiff on ten days loss of yard and ninety days of concrete yard (a yard attached to the side of the building in an isolated, unsupervised area).

From July 9, 2013, through July 15, 2013, defendants Gregory, Soto, Magana, Quillen, Majors, Juarez, and Pruix denied Plaintiff concrete yard due to the unavailability of the exposure control jumpsuit.  They also denied Plaintiff access to the law library from July 7, 2013, through July 13, 2013.

On July 12, 2013, and July 31, 2013, Plaintiff missed medical appointments because the exposure control jumpsuit was not found.

On July 15, 2013, De La Cruz found Plaintiff guilty of indecent exposure.  She penalized Plaintiff with loss of the following privileges for 180 days: TV/radio, personal property, canteen, special purchase, and annual packages.

On July 16, 2013, De La Cruz responded to Plaintiff's inmate request that she correct the exposure control jumpsuit restriction to thirty days, but did not.

On July 26, 2013, July 28, 2013, and August 2, 2013, defendants Magana, Hernandez, Soto, Majors, Penn, Philips, Cortez, and Covarubias left Plaintiff on concrete yard unsupervised in over 100-degree weather with the exposure control jumpsuit on, causing extreme body temperature while Plaintiff urinated on himself.

On August 4, 2013, defendants Gregory, Goulart, and Pruix, as well as Correctional Officer Alvarado, falsely claimed that Plaintiff refused yard.

On August 5, 2013, defendants Gregory, Goulart, and Pruix forced Plaintiff to forfeit the remainder of his yard to go to his cell to relieve himself.

On August 9, 2013, on the orders of defendant Munoz, defendants Pruix, Magana, Gregory, Juarez, Perez, Quillen, and Majors began denying Plaintiff concrete yard due to maintenance.

California Department of Corrections and Rehabilitation policy required prisoners to receive ten hours of yard, three times a week.  From July 11, 2013, through August 16, 2013, Plaintiff received approximately six hours of outdoor exercise.

On September 17, 2013, the D.A. charged Plaintiff with three counts of indecent exposure "against" Levan, Reynolds, and Restivo.

Plaintiff represented himself throughout the criminal proceedings.  Plaintiff, Levan, Reynolds, and Restivo testified at trial.  On January 21, 2016, a jury acquitted Plaintiff of all charges.

A court verdict of not guilty resulting from a trial is required to be accepted as the finding of fact on the same charge at a disciplinary hearing.  So, Plaintiff's prior finding of guilt had to be overturned.  Plaintiff filed a 602 to secure expungement.

On May 2, 2017, the Institutional Classification Committee ordered all reports related to the matter removed from Plaintiff's central file.

Plaintiff submitted his complaint to be electronically filed on May 25, 2020.

Plaintiff brings seventeen claims.

In claim one, Plaintiff brings a claim against defendant Levan for violating Plaintiff's Fourteenth Amendment right to equal protection, based on a class of one theory, by filing a false disciplinary report for indecent exposure against Plaintiff, triggering a criminal prosecution, in retaliation for Plaintiff filing complaints against staff.

In claim two, Plaintiff brings a claim against defendant Levan for violating Plaintiff's First Amendment rights by filing a false disciplinary report for indecent exposure against Plaintiff, triggering a criminal prosecution, in retaliation for Plaintiff filing complaints against staff.

In claim three, Plaintiff brings a claim against defendant Levan for violating his Fourteenth Amendment right to due process by fabricating evidence, causing Plaintiff to be

9

criminally prosecuted.

In claim four, Plaintiff brings a claim against defendant Levan for violating his Eighth Amendment right to be free from cruel and unusual punishment by denying Plaintiff his psychiatric medication.

In claim five, Plaintiff brings a claim against defendant Levan for initiating a federal malicious prosecution against Plaintiff.

In claim six, Plaintiff brings a claim against defendant Reynolds for violating Plaintiff's Fourteenth Amendment right to equal protection, based on a class of one theory, by causing Plaintiff to be prosecuted for indecent exposure with a false disciplinary report.

In claim seven, Plaintiff brings a claim against defendant Reynolds for violating Plaintiff's Fourteenth Amendment right to due process by fabricating evidence, causing Plaintiff to be criminally prosecuted.

In claim eight, Plaintiff brings a claim against defendant Reynolds for initiating a federal malicious prosecution against Plaintiff.

In claim nine,[1] Plaintiff brings a claim against defendant Restivo for violating his First Amendment rights by filing a false disciplinary report for indecent exposure against him, triggering a criminal prosecution, in retaliation for Plaintiff filing a complaint against her.

In claim ten, Plaintiff brings a claim against defendant Resitvo for violating Plaintiff's Fourteenth Amendment right to equal protection, based on a class of one theory, by filing a false disciplinary report for indecent exposure against Plaintiff, triggering a criminal prosecution, in retaliation for Plaintiff filing a complaint against her.

In claim eleven, Plaintiff brings a claim against defendant Restivo for violating his Fourteenth Amendment right to due process by fabricating evidence, causing Plaintiff to be criminally prosecuted.

In claim twelve, Plaintiff brings a claim against defendant Restivo for initiating a federal malicious prosecution against Plaintiff.

---

[1] Plaintiff listed claim eight twice, and so misnumbered the rest of his claims.  The Court is using the correct numbers.

In claim thirteen, Plaintiff brings a claim against defendants Carranza and Bonilla for use of excessive force in violation of the Eighth Amendment.

In claim fourteen, Plaintiff brings a claim against defendants Molina, Staggs, and Pruix for failure to intervene, in violation of the Eighth Amendment, when Carranza and Bonilla used excessive force on Plaintiff.

In claim fifteen, Plaintiff brings a claim against defendants Godina, De La Cruz, Magana, Hernandez, Pruix, Gregory, Soto, Majors, Penn, Philips, Cortez, Goulart, and Covarubias for use of excessive force in violation of the Eighth Amendment.

In claim sixteen, Plaintiff brings a claim against defendants Godina, De La Cruz, Magana, Hernandez, Soto, Majors, Penn, Philips, Gregory, Cortez, and Covarubias for violating Plaintiff's Eighth Amendment right to basic human needs by forcing Plaintiff to urinate on himself.

In claim seventeen, Plaintiff brings a claim against defendants Godina, De La Cruz, Munoz, Majors, Quillen, Perez, Juarez, Gregory, Magana, Goulart, Soto, and Pruix for violating his Eighth Amendment rights by depriving him of outdoor exercise.[2]

## III.    ANALYSIS OF PLAINTIFF'S COMPLAINT

### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los

---

[2] It does not appear that Plaintiff brought a claim against every defendant listed in his complaint.

Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

### B.  Statute of Limitations

#### a.  Legal Standards

California's two-year statute of limitations for personal injury actions applies to § 1983 claims.  Butler v. Nat'l Cmty. Renaissance of California, 766 F.3d 1191, 1198 (9th Cir. 2014); Cal. Civ. Proc. Code § 335.1.

\\\

The statute of limitations can be tolled for various reasons.[3]  Whether Plaintiff is entitled to equitable tolling is also determined by California law, except to the extent that California laws are inconsistent with federal law.  Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).

Equitable tolling "operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness."  Jones, 393 F.3d at 928 (quoting Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003)) (internal quotation marks omitted).  Under California law, there is a "three-pronged test for invocation" of the equitable tolling doctrine: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim."  Collier v. City of Pasadena, 142 Cal. App. 3d 917, 924 (1983) (footnote omitted); Addison v. State of California, 21 Cal. 3d 313, 319 (1978); Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1133 (9th Cir. 2001) (en banc). "Application of California's equitable tolling doctrine 'requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the … limitations statute.'"  Jones, 393 F.3d at 928 (quoting Lantzy, 31 Cal. 4th at 371)).

 "Where exhaustion of an administrative remedy is mandatory prior to filing suit, equitable tolling is automatic: 'It has long been settled in this and other jurisdictions that whenever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding.'"  McDonald v. Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88, 101 (2008) (quoting Elkins v. Derby, 12 Cal. 3d 410, 414 (1974)).  See also Brown v. Valoff,

---

[3] Due to the COVID-19 pandemic, in California "the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020," and "the statutes of limitations and repose for civil causes of action that are 180 days or less are tolled from April 6, 2020, until August 3, 2020." California Rules of Court, emergency rule 9.  It is not clear that this California rule would apply to this federal action.  However, even if this tolling applies to cases filed in federal court, the additional tolling does not appear to be relevant in this action.

422 F.3d 926, 943 (9th Cir. 2005) ("[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process.").

Additionally, California Code of Civil Procedure § 352.1(a) provides: "If a person entitled to bring an action … is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years."

"Although courts look to state law for the length of the limitations period, the time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles.  That time is presumptively when the plaintiff has a complete and present cause of action…."  McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019) (citations and internal quotation marks omitted).

"There is not a complete and present cause of action to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing.  Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of Heck, see 512 U.S. at 486–487, 114 S.Ct. 2364, will the statute of limitations begin to run."[4]  McDonough, 139 S. Ct. at 2158 (footnote, citation, and internal quotation marks omitted).

However, "where … a § 1983 claim accrues pre-conviction, the possibility that Heck may require dismissal of that not-yet-filed, and thus utterly indeterminate, § 1983 claim, is not sufficient to trigger tolling under California Code of Civil Procedure § 356.  In such circumstances, it is not known whether the claim is barred by Heck until the claim is filed and

_____

[4] In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. This "favorable termination rule" preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of confinement or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief.  Muhammad v. Close, 540 U.S. 749, 750-751 (2004).  Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

the district court determines that it will impugn an extant conviction.  Until that determination is made, a plaintiff is not legally prevented from taking action to protect his rights."  Mills v. City of Covina, 921 F.3d 1161, 1168 (9th Cir. 2019), cert. denied sub nom. Mills v. City of Covina, California, 140 S. Ct. 388, 205 L. Ed. 2d 219 (2019) (internal quotation marks omitted); see also Washington v. Los Angeles Cty. Sheriff's Dep't, 833 F.3d 1048, 1056 (9th Cir. 2016) ("The fact that a conviction has been set aside is *not* an element of the claim at issue. Indeed, a particular plaintiff's need to demonstrate that his conviction has been set aside is contingent on a threshold legal determination, made by the court, that the requested relief would undermine the underlying conviction.").

b.   Analysis

The Court finds that Plaintiff's claims that are not based on the allegedly false disciplinary reports and/or the false criminal charges, that is, claims four, thirteen, fourteen, fifteen, sixteen, and seventeen, should be dismissed as barred by the statute of limitations.

As summarized above, the incidents that led to these claims occurred in 2013. Additionally, these claims accrued in 2013.  These claims are not based on false disciplinary reports or false criminal charges.  Thus, the date Plaintiff was allegedly acquitted (January 21, 2016) and the date the false reports were allegedly removed from his record (May 2, 2017) are not relevant to determining when these claims accrued.

Plaintiff alleges that he submitted his complaint to be electronically filed on May 25, 2020.  This is approximately seven years after the claims accrued.  Even assuming that Plaintiff is entitled to a four-year statute of limitations period, Plaintiff missed his deadline by approximately three years.  There is nothing in Plaintiff's complaint, or in his response to the order to show cause, that suggests that Plaintiff is entitled to approximately three years of equitable tolling.  Thus, claims four, thirteen, fourteen, fifteen, sixteen, and seventeen should be dismissed as barred by the statute of limitations.

The rest of Plaintiff's claims are based on false disciplinary reports and/or false criminal charges.  Given that Plaintiff was acquitted of the criminal charges in January of 2016 and the reports relating to the matter were ordered removed from Plaintiff's central file in May of 2017,

the Court has screened these claims, and recommends allowing some of them to proceed past screening notwithstanding a potential defense based on the statute of limitations.

### C.  Retaliation

#### a.  Legal Standards

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001).  Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities.  Rhodes, 408 F.3d at 567.

#### b.  Analysis

Plaintiff brings retaliation claims against defendants Levan and Restivo based on the allegation that they both filed false reports against him, which led to criminal charges.

Plaintiff alleges that he is a litigious inmate, and that this is widely known amongst staff.  Plaintiff also alleges that he filed an administrative appeal against defendant Levan, and grievances against her co-workers.  A few weeks before the incident, Plaintiff told defendant Levan that he needed to have his liquid supplement renewed.  Defendant Levan told Plaintiff that she would help Plaintiff if he stopped filing paperwork against one of her co-workers.  Plaintiff declined her help.  Defendant Levan later filed a false report against Plaintiff.  The false allegations led to a loss of privileges, good time credits, and eventually, criminal charges.  Liberally construing the allegations in the complaint, the Court finds that Plaintiff's retaliation claim against defendant Levan should proceed past screening.

As to defendant Restivo, Plaintiff alleges that he filed a 602 against her on May 14, 2013.  This led to defendant Restivo's supervisor monitoring her on June 15, 2013.  On that same day defendant Restivo told Plaintiff to talk to her about any issues because she did not want her supervisor coming to the unit.  Approximately two weeks later, defendant Restivo allegedly falsely accused Plaintiff of indecent exposure.  Plaintiff was subjected to false disciplinary reports and false criminal charges.  Liberally construing the allegations in the complaint, the Court finds that Plaintiff's retaliation claim against defendant Restivo should proceed past screening.

### D. Malicious Prosecution

#### a. Legal Standards

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.  Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed."  Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (alterations in original) (citations and internal quotation marks omitted).  The Ninth Circuit has also explained that, "[i]n this circuit, the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy.  However, an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights."  Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987) (citations and internal quotation marks omitted).

The Ninth Circuit has "incorporated the relevant elements of the common law tort of malicious prosecution into [the] analysis under § 1983."  Id.  "The essential elements of the tort are the same in both the criminal and the civil contexts.  In every case, in order to establish a cause of action for malicious prosecution a plaintiff must plead and prove that the prior proceeding, commenced by or at the direction of the malicious prosecution defendant, was: (1)

pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." Villa v. Cole, 4 Cal. App. 4th 1327, 1335 (1992). See also McCubbrey v. Veninga, 39 F.3d 1054, 1055 (9th Cir. 1994). A plaintiff must also show "resulting damage…." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir.2008) (quoting Harbor Ins. Co. v. Cent. Nat'l Ins. Co., 165 Cal.App.3d 1029, 211 Cal.Rptr. 902, 907 (1985)).

### b. Analysis

Plaintiff brings a section 1983 malicious prosecution claim against defendants Levan, Reynolds, and Restivo.

Plaintiff has sufficiently alleged that he was subjected to false criminal charges due to the false allegations made by defendants Levan and Restivo. Plaintiff has also sufficiently alleged that these false allegations were made in retaliation for Plaintiff exercising his First Amendment rights. Finally, Plaintiff has alleged that he was acquitted of the criminal charges. Liberally construing the allegations in the complaint, the Court finds that Plaintiff's section 1983 malicious prosecution claims against defendants Levan and Restivo should proceed past screening.

As to defendant Reynolds, Plaintiff has failed to state a claim section 1983 malicious prosecution claim. There is no indication in the complaint that defendant Reynolds made false allegations against Plaintiff because Plaintiff exercised his constitutional rights. Notably, while Plaintiff brought a retaliation claim against defendants Levan and Restivo, he did not bring a retaliation claim against defendant Reynolds.

### E. False Evidence in Violation of the Fourteenth Amendment

### a. Legal Standards

Deliberately providing false evidence that results in criminal charges or certain administrative penalties can give rise to a due process claim where there was a resulting deprivation of liberty. Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.");

Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101 (9th Cir. 2010) (denying summary judgment on a fabrication of evidence claim against a defendant based on evidence that the defendant falsified evidence that was used in an administrative proceeding, and which led to the revocation of Plaintiff's foster care license and loss of guardianship of two minor children); Chappell v. Bess, 2012 WL 3276984, at *22 (E.D. Cal. Aug. 9, 2012) ("The court finds that plaintiff has alleged the deprivation of a cognizable liberty interest based on his allegations that, as a result of defendants' alleged fabrication of evidence, plaintiff was subjected to unwarranted disciplinary proceedings and criminal prosecution, and was retained in administrative segregation for more than two years, the latter, particularly if unwarranted, constituting an atypical and significant hardship ... in relation to the ordinary incidents of prison life.") (alteration in original) (citation and internal quotation marks omitted)

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.  To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question."  Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted).

b. Analysis

Plaintiff brings a Devereaux claim against defendants Levan, Reynolds, and Restivo. Plaintiff has sufficiently alleged that he was subjected to false disciplinary reports and false criminal charges due to the deliberately false allegations made by these defendants.  Plaintiff was subjected to penalties due to the false allegations, including loss of privileges and being forced to wear an exposure control jumpsuit.  Liberally construing the allegations in the complaint, the Court finds that Plaintiff's Devereaux claims against defendants Levan, Reynolds, and Restivo should proceed past screening.

\\\

**F.   Fourteenth Amendment Equal Protection Clause**

a.   Legal Standards

The equal protection clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, Hartmann, 707 F.3d at 1123 Furnace, 705 F.3d at 1030, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008), Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008), North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

b.   Analysis

Plaintiff brings a Fourteenth Amendment equal protection claim against defendants Levan, Reynolds, and Restivo.  However, Plaintiff has not alleged that he is a member of a protected class, or that he was intentionally treated differently from similarly situated individuals.  Accordingly, Plaintiff has failed to state an equal protection claim against any of these defendants.

**IV.   CONCLUSION AND RECOMMENDATIONS**

The Court has screened the complaint and finds that the following claims should proceed past the screening stage: Plaintiff's retaliation claims against defendants Levan and Restivo; Plaintiff's section 1983 malicious prosecution claims against defendants Levan and Restivo; and Plaintiff's Devereaux claims against defendants Levan, Reynolds, and Restivo. The Court also finds that all other claims and defendants should be dismissed.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1.   This case proceed on Plaintiff's retaliation claims against defendants Levan and Restivo; Plaintiff's section 1983 malicious prosecution claims against defendants Levan and Restivo; and Plaintiff's <u>Devereaux</u> claims against defendants Levan, Reynolds, and Restivo; and

2.   All other claims and defendants be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   __**September 10, 2020**__          ___/s/ Erica P. Grosjean___

UNITED STATES MAGISTRATE JUDGE

21